May it please the Court, I'm aspiring to reserve five minutes for rebuttal, but I understand that courts... I have a feeling we'll go a little bit longer on both sides, so you'll get your rebuttal time and we'll keep rolling. Thank you, Judge. May it please the Court, as applied to risk-based pricing and underwriting of homeowner's insurance, the HUD's disparate impact rule is invalid for three independent reasons. First, in every application, the rule interferes with the state regulation of insurance in violation of the McCarran-Cortes Act. Secondly, rejection of any exemption was arbitrary and capricious. And third, applying the rule to homeowner's insurance pricing contravenes inclusive communities, which limits disparate impact liability to actions that are, quote, artificial, arbitrary, and unnecessary, not claims that interfere with legitimate business practices, indeed practices dictated by state law. I'll address standing for a moment because we're mindful that the Court asked each party to file a supplemental brief. In this case, standing is plain, both because PCI's members are directly regulated by the rule, which specifies how HUD administratively and the Justice Department in court will enforce the disparate impact regular requirement against insurance pricing and underwriting. And secondly, in light of the unrebutted evidence of costs that the rule imposes on our members to address the meaningful risk of disparate impact liability, presenting purely legal issues, the claims in this case are, quote, quintessentially fit for resolution, citing this Court's earlier opinion in EF Transit. As to McCarran-Ferguson, the rule violates the Act in two distinct ways. First, it manifestly requires federal courts to determine whether challenged insurance practices are actuarially sound and consistent with state law, a result that this Court correctly found unlawful in its decision in Mutual of Omaha v. Doe. Second, and independently, the rule substantively conflicts with the insurance laws in every state, all of which require insurers to set rates based on actuarially sound risk factors by imposing instead a different federal standard. Under McCarran-Ferguson, HUD simply does not have the statutory authority to subject risk-based pricing and underwriting to a federal disparate impact inquiry. Mr. Waxman, is this a good time to pause you, or did you have? I was going to move on to my other two arguments, so this would be great. Let me just get one more. Do you agree that there is a premise, a foundation, to your facial challenge that we need to reach a conclusion on to rule in your favor, and that maybe premise, foundation is not the right word. You can improve upon that. But do we believe, do we need to conclude that all 50 states require risk-based underwriting to rule in your favor, or is there some other question, maybe that's not the right one, but some other question regarding state law across the country that we do need to resolve to credit your position? So my answer is a qualified yes. I'll give you the two qualifications and explain the balance of which I agree with. I would say yes, too. Number one, there are two different aspects of the McCarran-Ferguson preemption. One is what we call the interference aspect, and the other is what we call the conflict aspect. Your Honor's question, I understand, to be asking, is it fair to say that you can't establish that there is a conflict with every state law unless we establish that every state law requires, in effect, risk-based pricing and underwriting? It doesn't, it wouldn't apply at all to the interference claim, which is, as this court explained in Doe and the Eighth Circuit and the Third Circuit and the cases we've cited, Your Honors, have similarly agreed. Any regime that displaces state insurance commissioners with a federal court to decide whether an actual or proposed, proposed by the plaintiff, method or schedule of pricing and underwriting is compliant with state law is prohibited by the McCarran-Ferguson Act. So, in other words, my major qualification is, even if no state law, the state laws had different standards other than risk-based pricing and underwriting, if in order to evaluate a challenge under HUD's rule, a court would have to say, well, is the rule being challenged mandated or consistent with whatever state regime there is? Or is it at least consistent with, that is, is it permitted by the state regime? And number two, if we get to step three of the balancing test, the regime, the model proposed, the less discriminatory model proposed by the plaintiff, would that comply with state law? McCarran-Ferguson designates the state officials, the relevant designated state official, as the adjudicator of those claims, not a federal court. So that sounds to me, on what you're calling the interference claim or the interference aspect, that sounds like kind of a strong version of reliance on mutual of Omaha. Is that fair? Because you point to language in mutual of Omaha, where I think what you would say is, what I just said is essentially what the court said in mutual of Omaha, that there's a McCarran-Ferguson problem to even kind of examine state law. That's right. And that same approach has been taken by the only two other courts in the country, which happen to be the Eighth Circuit in the Sanders case and the, I'm forgetting the name of the other case we submitted a letter about on Monday, and the Third Circuit in the Ford versus Shearing Plow case, both of which have adopted what this court articulated in Doe versus Mutual of Omaha on this, it violates McCarran-Ferguson to displace state commissioners with a federal court in evaluating whether either the challenge schedule or the proposed schedule would be consistent with state law. That's the job of state insurance commissioners who are far better qualified to evaluate those claims. Mr. Wexler, what about those states where the insurers aren't required to file with their rates or where the state doesn't review rates? And in those cases, in your hypothetical or in your situation, we wouldn't have to examine the, our examination of rates would not call into question any determination by the commissioner because commissioners frankly didn't look at them, doesn't care about them. If such a state existed in which there was no requirement for filing and no examination by any state official, it would be hard to argue that there was a displacement of a state regulation of insurance if in fact there is no regulation of insurance. But in fact, every single state, and I don't think that HUD disagrees here, every single state does require the filing, not only of the rates, but as a practical matter, what happens every year is there is a filing of a whole actuarial analysis that explains, this is the actuarial formula that we applied, here's why we applied it, here's how we tested it against our experience in prior years, and here are all the rate schedules for each tranche of risk. Every state requires that that be filed, number one. Number two, there are a few states that don't require the insurance commissioners to evaluate and approve that in advance, but there is no state that says that the state regulatory officials do not have the authority to do it and do not, in fact, periodically do it. Illinois is a good example of that. You have to file, but the statutory requirement is that the insurance commissioner will regulate, will examine, and evaluate at least every five years. Does it matter whether or not, in fact, in a particular case, the insurance commissioner did examine it? Absolutely not. If it doesn't matter what happens in a particular case, then isn't that more akin to field preemption? Because what you're looking at is not what really happens or what interference there actually is, but what interference there potentially could be. The point here is that this is a case of conflict preemption, and the conflict preemption, I We're not arguing, and we have never in the 12 or 13 years in which this case has been making its way up to your honors, have never argued that the Fair Housing Act itself didn't import a, didn't include a disparate impact standard. That's being litigated in the D.C. Circuit by a different association. Our point here is that McCarran Ferguson, and I'll leave aside our arbitrary and capricious claim, that McCarran Ferguson precludes federal courts from evaluating whether or not rates that are filed with state commissioners on pricing and underwriting, which is the molten core of insurance, homeowners insurance regulation, are, in fact, consistent with state law. It may very well be that the plaintiff will get to court before the state insurance commissioner examines it, but it is still displacing the role, the designated role of states and state insurance commissioners to evaluate the claim. The claim that you just articulated is a claim that can be made and is indeed sometimes made by plaintiffs to state insurance commissioners or suits in state court. How do we square that broad interpretation with the language of Humana? Specifically, Humana says that the McCarran Ferguson Act belies the congressional intent, and I'm quoting, that belies any congressional intent to preclude federal regulation merely because the regulation imposes additional liability to or greater than state law. So my question is, is the broad language of mutual Omaha and your argument regarding interference, is that consistent with Humana? A hundred percent, because in Humana, there was no suggestion whatsoever that applying RICO to the insurance fraud scheme alleged would require, would have required a federal court to second guess or step in and itself evaluate determinations like actuarial judgments that are reserved to state regulators or to police compliance with state law. What, what Humana said was, look, the question of whether or not this was illegal or not illegal under state law is not for us. The question is, having been found to be fraudulent under state law, does McCarran Ferguson preclude the imposition of an additional federal penalty that is consistent with state law? Can I pick up on this? So we have in front of us, as you know, we have some briefing. I'm thinking about, there's an amicus brief that Illinois has signed in particular where Illinois suggests that under Illinois law, there could actually be disparate impact liability. And so if you picked up on, for homeowner's insurance, so if you pick up on, if that's, that's accurate, and then you consider Humana, you said there's really, it's hard to see a conflict here when Nevada law, you know, prescribes the fraud in the scheme in Humana. Why isn't that a parallel here? That's my first question. And my second question is just more of a step back that I'd ask Mr. Sandberg to comment on too. You, you've done tons of litigation, Mr. Waxman, you've done a lot of facial challenges. Facial challenges are not favored, number one, and it's very odd from my perspective to find a facial challenge that requires you functionally, effectively, to conduct a 50 state survey to adjudicate. That's odd. So I, if I'm, if I'm understanding you correctly, I believe you've asked me to comment on two different things.  Yeah. Okay. So. But the first relates to the second. Well, no. Let me, let me answer them in turn. First of all, the brief, there are two state briefs in this case, one filed by 13 state attorneys general who are commenting exclusively about state law, fair housing laws, and anti-discrimination laws. There is a brief filed by 13 insurance commissioners who explain, I, to my mind, quite convincingly why there is McCarran-Ferguson interference and conflict, but looking only at the brief your honor referred to, the fact that the question of whether state law has a general imposition of a discriminatory impact standard that might bear on insurance is not a question that McCarran-Ferguson speaks to at all. The states can decide what they want to decide. State courts will have to figure out. And so far, so far as I know, and so far as the state AGs have submitted, there is no case ever that has, that has successfully applied a state or federal discriminatory impact standard to risk-based pricing and underwriting. No, fair enough. But wouldn't you have a complement from the federal law? The point, the point about complement that derives from Humana is if all the, if federal law does not implicate in any way the judgment about the actual legality of risk-based pricing and underwriting, but simply takes it as a given that there is a violation, can federal law apply an extra remedy? Humana says, yes, that doesn't bar McCarran-Ferguson. So for example, if Congress had passed a law that said, or an amendment to the Fair Housing Act, that says, look, we're very, very mindful of the limitation that the McCarran-Ferguson placed on regulation of insurance. And we're not saying, as the Supreme Court has said, that there's no field preemption of insurance companies. But with respect to risk-based pricing and underwriting, if there is an adjudication of a violation of state law, whether it be disparate impact or otherwise, federal law authorizes, I don't know, disgorgement, or, you know, there is some additional federal remedy. That would be the supplement, Judge Scudder, that Humana is talking about. Now, as to- I'm sorry. No, I was going to go to his second point. No, no. Go ahead, please. And I'll ask you afterwards. OK. I'll write it down. Don't worry. I won't forget it. Look, there has been much ink spilled in the two district courts below, and indeed, in the NAMIC case in the D.C. Circuit over whether the challenge here is facial or as applied. I mean, we are not seeking to facially invalidate this rule. We're seeking to have it declared as applied to risk-based pricing and underwriting, not with respect to insurance advertising or sales or anything like that. With respect to the very core of what insurance regulators do, this is reverse preempted in every case by McCarran-Ferguson. Now, the government argues, and I don't really think, as we have indicated in a footnote, much turns on whether you call that an as-applied-to-a-certain-category-of-cases or a facial challenge to the application to a certain category of cases. The fact of the matter is that this case does present, Your Honor, a pure legal question. And Judge Scudder, I think it is the question that you asked me a while back, which is, does it matter that every state ... Do we have to find that every state law requires this? Now, as to that, I don't understand my friends on the other side to be arguing, to be disputing in any way that all 50 states and the District of Columbia, and there's an appendix that's in the record that we filed below that lists the statutory authorities in every state. Every single state, bar none, prohibits, quote, excessive, inadequate, or unfairly discriminatory rates defined as treating similar risks, pricing similar risks differently, or treating similar risks differently. In other words, that rates have to be set. In order not to be discriminatory, they have to be set based on an objective risk analysis. And that's the key to the solvency of insurance companies and the availability of fairly priced insurance rates to consumers. And so there is, in fact, a ... I'll address in rebuttal whatever states my friend on the other side said doesn't have this prohibition against unfairly discriminatory rates. But if I'm right about that, then there is, in fact, a wholesale conflict preemption. And even if I'm not right about that, even if state laws just permitted and would approve rates that are set based on actuarial risk factors, the McCarran-Ferguson Act doesn't allow federal courts, in the words of this court's opinion and Judge Posner's opinion for the court in Doe, to displace states' choices about the proper conduct of the business of insurance. That was also, I'm also quoting Judge Easterbrook's opinion for this court in American Family, which was decided seven years before Doe. I see that my time is ... Oh, right. I'm sorry. I'm going to get in my questions while I can. First of all, I'm just trying to understand what you mean by risk-based insurance pricing and underwriting policies. Do all the states prohibit insurers from considering other factors in setting their rates? For example, market competition. Is that something that states, that insurers cannot consider when they set their rates? So when state ... In other words, do the rates have to be purely based on the risk-based analysis, or is there a component of setting rates that is something different from the risk-based analysis upon which you rely? So, if I'm understanding the question, and I may not be, so please interrupt me if I'm not, there is no requirement in state law that all insurers charge the same price to ... I just bought, for the second time in my whole life, a house in Massachusetts, and I asked for, and got last week, three quotes from homeowners insurance companies. One insurance company said, we will insure the home for $17,500, which is four times as much as I pay for my 100-year-old house in Washington, D.C. The other insurance company said, we will charge you $41,000 to insure this house. And the third company said, this is a 25-year-old house that is cedar-shake, even in the roof, and located in an area that has no reliable fire department. We won't insure you. And so there's no ... What the insurance commissioners and what state regulators want is, they want an articulation based on the actuarial science of how you are distributing the price for transferring risk among different categories of borrowers. You can have a high threshold for risk or a low threshold. No, I understand that. And I guess I'm not ... My question is, I'm just trying to understand. I understand that different insurers can assess this risk differently. My question is, do states allow components other than risk to be considered when insurance companies set their rates? So I think the answer to the question is, I can't give you a definitive answer other than to say, you have to be able ... The only way you can justify your rate schedule and the actuarial algorithm is by demonstrating that it is not excessive or inadequate or unfairly discriminatory, and the latter means, not disparate impact, what it means is that you would charge two different customers that presented similar risk profile under the rate schedule set different prices. That's the, I think, the best I can do. Unless there are any further questions, I'll ... I think a question is coming. It's kind of an offshoot of that, which is, say, hypothetically, a ... I know that you distinguish cases that talk about disparate impact versus disparate treatment in the FAA. I'm not really quite sure why that would matter when it comes to the McCarran-Ferguson Act, but let's assume that we have a case where a plaintiff can prove that an insurer selected a risk factor with the intent of discriminating against a particular protected group, and therefore, the rate is higher for that group. Let's say they file the rate in the state, the state commissioners don't get around to reviewing it, and there's a ... The plaintiff files an FHA disparate treatment claim, which would that claim in that situation, in your mind, be barred by McCarran-Ferguson? What I would say is the following. Number one, the disparate treatment cases that have been adjudicated so far have been cases that would not involve ... That don't involve, for example, how you priced a particular risk and what you had in mind. They're like, you are redlining. You are intentionally refusing to offer insurance to the following categories of people. The issue in that case is pure motive. It is looking at the intent. Why did you do that? In my hypothetical ... I'm sorry, in your hypothetical, you could imagine getting into the question of whether ... The defense would be, that's not why I did it. I did it because that's what actual aerial science requires. I think that's an edge case, and I'm not sure that that isn't precluded by McCarran-Ferguson, but the one thing I am sure about is that applying and overlaying a federal disparate impact standard will require the ... Is adding a requirement that state law, state insurance law does not allow because, in fact, state insurance law requires that there be no discrimination against in between customers that present similar risk profiles under the filed and approved rate schedule. Number two, there is no way that a court can adjudicate a disparate impact claim under step two or step three of HUD's rule without asking the question, does the current schedule comply with state law or be required by state law, and does the plaintiff's proposed alternative, would it comply with state law? Those inquiries are the inquiries that McCarran-Ferguson says belong to state insurance authorities. I hope I ... I may not have satisfied you, but I hope I've answered your question.  Thank you. Okay. We'll give you some rebuttal time. Mr. Sandberg. Nice to see you. Good morning, if it may please the courts. Jeff Sandberg for HUD. I think it's worth remembering what this case and what this challenged rule is actually about because I think there's a lot less disagreement here than meets the eye. This case is not about whether there should be a declaratory judgment entered about in all 50 states would risk-based pricing and underwriting result in liability under the Fair Housing Act. This is a challenge to a HUD interpretive rule. You can see the entirety of it on two columns on page 225 of the appendix. That sets forth the agency's views as to the appropriate decisional framework that HUD intends to use and that it recommends but can't force courts to use in working through questions of discriminatory effects liability under the Fair Housing Act. By design, the agency did not set out to promulgate this rule to address whether any particular housing practices, including any particular homeowner's insurance practices, are actually unlawful. The agency also did not set out to opine about whether other bodies of law, whether it be the McCarran-Ferguson Act, Religious Freedom Restoration Act, anything else, whether they would provide defenses to Fair Housing Act. Mr. Samberg, your argument is there's nothing to see here. That's what I hear you saying. At every level of the case, that's right. Why notice and comment? Why did the agency go through so much to impose this? We have 10 years of litigation to uphold this regulation. If there's nothing to see here, what are we doing? Agencies are not required to go through notice and comment when they issue interpretive rules. However, they may choose to do so and we think it's a matter of good government when you've got 10,000 plus comments on a topic and it's on an issue that courts have come up with different approaches for how to work through the question of discriminatory effects liability. HUD said, we're going to put out our best reasoning as to how we think this should work in response to everyone, but we recognize this doesn't bind courts and anybody in any HUD administrative proceeding can choose to go to court if they wish to. So HUD doesn't have the final word on any of this. And so the fact that HUD has issued this rule shouldn't be a reason why we should all sort of stop and do a 50-state survey of how does the McCarran-Ferguson Act, and assure ourselves that the McCarran-Ferguson Act would result in preemption in every instance. We entirely agree with plaintiff that there are instances where liability would not lie for the practices they're talking about, either because McCarran-Ferguson Act would apply or because the burden-shifting practice itself would immunize those practices. So if, for example, insurers commonly will charge, as I think my opposing colleague was referring to, different rates based on whether, for the same level of coverage, based on whether your house is built out of wood or built out of brick. And that may very well have a disparate racial impact. There is no liability under the Fair Housing Act for that because it is based on sound actuarial science, and that would either, as a McCarran-Ferguson matter or as a step two of the burden-shifting matter, defeat liability. On the other hand, there are many practices... Wait, wait, hold on. Isn't, as to which one, isn't that important? Because if it's a McCarran-Ferguson Act, why is Mr. Waxman not right? Because it wouldn't apply... Because it wouldn't apply in every circumstance, Your Honor. I think the questions before about how... Is that because of difference in state law? Because of differences in state law, yes, and because of differences in the practices that are being challenged. But the argument is one of interference. The argument is one of interference. So if you have to consider state law in the first instance, there's interference in their form of McCarran-Ferguson borrowing. Let me give you a few examples where there would not be interference. If a disparate impact claim was brought saying, you are offering discounts to suburban borrowers who are bundling home and car insurance together that you're not offering elsewhere, I mean, that may be not... Won't be a valid claim, but the state regulators probably don't bar discounts. State regulators in some states, but not others, will have something to say about the practice of price optimization where, unbeknownst to many of us, we're actually being charged higher rates than are actuarially based because they have done the market research to see that we're not likely to switch homeowners insurers unless the price gets considerably higher And so some states regard that as price gouging, other regard it as a fair form of market competition. There's also practices that are... On the underwriting side, it's particularly clear that there's not necessarily interference because insurers will decide, and if they got the exemption they wanted here, they would probably later call it risk-based, although it's not based on actuarial data. They'll say things like, we don't want to insure group homes. We don't want to insure multifamily properties where there are tenants on public assistance. That's not based on actuarial loss data. That's just based on, we don't feel like being in that market. Well, that is an instance where Judge Bates on the District of Columbia District Court denied a motion to dismiss for disparate impact claim, and who knows whether that would ultimately succeed or not. I think the case settled, but it's not a McCarran-Ferguson Act problem there because you're not second guessing what state insurance commissioners did. These folks here said, as a matter of underwriting, we're just not going to write policies, as my colleague said, for an entire class of people. And that class is not defined by race, but it is defined by people receiving public assistance. I think that may perhaps, that's why whether this is a facial challenge is so important. I think that's right. And I agree with my colleague that whether you want to call it facial or as applied doesn't really matter. The point is they're saying there's a whole category of things that they're doing that they think they get off, that McCarran-Ferguson Act applies in all instances. And that's not right. I mean, there are some of the cases in the category of pricing and underwriting will result in preemption and some won't. And HUD didn't want to tack a bunch of like non-binding declaratory statements of the agency's opinions of law to the end of its rule on- The hardest part about this for me is every time I sit there and I think about it, I think what state law actually or hypothetically is the starting point of the analysis? So if you have some plain vanilla state law that just is very kind of quintessential underwriting risk-based actuarial or determined rates, I think his argument's pretty good in hypothetical state A that there's reverse preemption there or there's displacement. Well, he only wants to point you to claims that are- But it's not- I don't think we can resolve it on the basis of me or you or anybody else in the courtroom coming up with a hypothetical. We have 50 states. We have 50 states. We have many different kinds of practices. Some of them are going to be very risk-based in the sense that they're based on crunching actuarial data. Some of them are going to be risk-based in the sense that they involve some subjective discretion. Some of them are not going to be risk-based at all. They're going to be categorical underwriting refusals to sell policies to particular folks. And I don't see how it advances the analysis for the agency to interject a new concept called risk-based pricing and underwriting, which is not itself a term of art under state law. It is a business concept. And so all we would have if the agency wrote this exemption, which wouldn't be a substantive exemption. It would just be the agency's non-binding opinion of law into the reg, we would then have a fight down the road about, okay, well, do you qualify for the exemption in this case because it's what you're doing risk-based or not? When someone challenges them for failing to rent to properties where there are Section 8 tenants living there, they'll say it's risk-based. The plaintiffs will say it's not risk-based. You'll have a federal court having to decide whether to defer to, you know, whether this qualifies as risk-based under HUD's rule and then whether to defer to that. I'm not sure how making things more complicated, as Plaintiff wants, is actually helping advance the statutory analysis at all. Mr. Sandberg, if a state passes a law that says, you know, we have, you know, our state law provides for disparate impact discrimination claims, right, in housing. And we believe and specifically includes the homeowners insurance industry under that umbrella in all respects, right? And then Plaintiff brings a challenge under the federal FHA. In that case, would, I take it your position would be there would be no preemption because the federal law merely complements the state law and doesn't really do any kind of interference with the state policies? The very point is there may well be no preemption, but we need to know more about what claim is actually being brought there. I mean, if it were a claim that then, if the premise of the federal claim was that a state insurance regulator did their job poorly and approved something they shouldn't approve, I think my opposing colleague would still have a lot to say about, you know, mutual of Omaha there. But if the premise of that claim doesn't require second, if it takes as given that the state insurance commissioner did their job correctly, but you're focused on the state and federal fair housing laws, I mean, because the state insurance law is addressing a different thing, right? It's about whether you're treating the same actuarial risks similarly or differently. And the fair housing law can complement that rather than contradict that in many, many instances. And Illinois' point here is that this is precisely like Humana, where Illinois is saying, look, as a matter of our state's law, the state insurance law, the fair housing law coexist. They can be read harmoniously. We would welcome an added layer of federal protection that the Fair Housing Act provides. And it's actually more consistent with the spirit of the McCarran-Ferguson Act to allow states to complement with that added layer of federal protection than it is to divest states of that because of a heckler's veto from another group of states who actually, if it were litigated there, it would carry the day. I mean, the Ojo case out of the Ninth Circuit, for example, where the Ninth Circuit on bonk recognized disparate impact liability for homeowners insurers, then certified to Texas the question of whether it would, you know, conflict with state law. And the Supreme Court of Texas said there is no disparate impact liability for this particular type of claim here because it conflicts with our insurance scheme. And so the insurers won that case. I mean, that's a happy ending case for our plaintiffs who are concerned. Do you believe a plaintiff could come in and say, I'm going to stipulate at the outset that the rate making here, the pricing of the insurance is actuarially sound, that it is the fruit of risk-based pricing, all that. I'm going to stipulate to that. I'm not challenging it in any way, shape, or form. But it is yielding disparate impact. And I think that if they adjusted the factors, we're going to give you time, don't worry about it, all right? If they adjusted the factors, there would be less or no disparate impact. That's exactly right. That is one claim that a plaintiff could bring. Would a case like that go forward, or would you say, hold on, hold on, the stipulation kills the claim? No, well. Or would you say, no, it could go forward. I think that's the McCurran-Ferguson Act problem, which I think is plaintiff's primary concern here in stepping in with this rule, saying, hold up, HUD needs to stop speaking in general terms about a decisional framework and start talking about particular housing practices and whether they would result in substantive liability or not. I don't think it's appropriate for a plaintiff here to necessarily hijack the agency's rulemaking into offering blanket opinions about how things would shake out in all 50 states. Agencies have broad discretion to proceed by rulemaking or by adjudication. Here we're not even talking about a substantive rulemaking, we're talking about an interpretive rule, right? This is just the agency saying, as a matter of good government, we think this is the best way to work through this. And the agency thinks that there's just too many different variations in the kinds of practices that could be challenged, the kinds of state insurance laws you can see. There are states like, although all states, I agree with my colleague, all states regulate insurance. All states say that your rates should not be unfairly discriminatory. But not all states actually review and approve rates. Most states don't review and approve underwriting guidelines. Underwriting, choosing whether you're going to renew someone's insurance or not, can be based on lots of different things other than just price, right? And so HUD doesn't think it's appropriate to try to write some blanket exemption in advance that just introduces complexity into an area where the ultimate question is, it was the statute violated and does the McCarran-Ferguson Act in the context of that case provide a defense? And so it's appropriate to consider that question as it arises, if indeed it ever arises. I mean, as we pointed out in our supplemental brief, what they're effectively asking for here is a declaratory judgment act about their potential liability under the Fair Housing Act. They can't point to any instance in the past 15, 20 years that I'm aware of where something that they would consider to be truly risk-based pricing and underwriting was actually challenged by HUD or by a private plaintiff for that matter. It would be interesting to, I suppose, to know more what they think about the Section 8 hypothetical or the group home hypothetical or refusing to underwrite older homes or price discounts or price optimization. But we don't regard those as purely risk-based pricing or underwriting, and we need to leave space open for the possibility that there might be some claims that would survive. Mr. Sandberg, if I could focus on the actual three steps that HUD is proposing here. The third talks about the fact that a plaintiff needs to show that there's an alternative where a substantial non-discriminatory interest could be served, right? And I understand that during the rulemaking, HUD was asked whether that would mean that the alternative would need to be equally effective in predicting risk. And HUD, during rulemaking, declined to adopt the equally effective language. And I guess my question to you is, what is HUD's interpretation of what it means when a substantial non-discriminatory interest could be served? To what degree must that interest be served? How predictive does a factor need to be, right? Let's say the factor that an insurer used is 70% predictive, and the alternative is 40% predictive. Would that satisfy rule step three? I don't know, Your Honor. I think that that's a matter that would be worked out through case-by-case adjudication. I mean, the specific proposal that was put in in the comment was that we think it's legally required, that inclusive communities makes it legally required for you to say equally effective. And inclusive communities does not, in fact, say that. That language had appeared in an earlier case called Ward's Cove that was cited in inclusive communities. But I think there's more kind of semantic disagreement here than there is substantive disagreement. If you look at the explanation in HUD's rule here, it says, look, no, we recognize that there are legitimate business interests, including but not limited to risk-based actuarial interests. There are other legitimate business interests that may well survive at step one and step three as well. And I know one phrase where HUD said at some point in the preamble that, like, obviously you couldn't impose an undue burden on the insurer. But I don't think by that HUD meant to be adopting a different standard than, you know, equally effective necessary. I think this is one of the reasons why, you know, this claim like the others doesn't really strike us as particularly right because we don't know that HUD actually would apply that step three any differently than they would want them to in terms of what equally effective means. I have a question for you about our precedent, Mutual of Omaha. That's for us to deal with, not so much you, but I would invite your comment on what do you recommend we say here about Mutual of Omaha and how should we read it? I think the easiest way to handle Mutual of Omaha is to say, look, there's, you know, there's been dispute on parties and it's been noted by, among others, Chief Judge Kendall and her recent opinion in the district court in the Husky case about how broadly should we read Mutual of Omaha. And even if we read it broadly, is there still room for federal courts to entertain some cases and so forth? However broadly or narrowly you read Mutual of Omaha, at the end of the day, the question here is whether HUD was arbitrary and capricious in refusing to interject a blanket exemption into its interpretive rule. And I think the answer to that is it was not arbitrary and capricious. And so I don't think you need to render any definitive opinion about the scope of Mutual of Omaha. However, if you, you know, were to opine more about it, I would encourage you to look to the fact that there was a particular insurance practice at issue in that case. It was a cap on lifetime benefits for AIDS-related illnesses intersecting with Illinois law. The principal holding of that case was actually about the meaning of the ADA and not the McCarran-Ferguson Act. That case wasn't about rate setting at all. It was about a cap on benefits. I mean, there, there, the Fifth Circuit in De Hoyos addressed why it thought its conclusion was not in tension with Mutual of Omaha, pointing to the fact that there was a particular insurance practice at issue there. I, I would encourage this court not to go out of its way to read its precedent in conflict with other circuits. I think Judge Kearse's question before about, you know, would reading Mutual of Omaha too broadly be in tension with the outcome of Humana is exactly right. I mean, Humana rejected field preemption. It did say, it did say that in addition to conflict preemption, there is a, you know, an interference preemption, which I understand to mean you shouldn't be second guessing decisions of state insurance commissioners. You shouldn't be saying you were wrong state insurance commissioner, but there's still plenty of room for things to co-exist. Um, and, and if you're reading that, that needs to be done of our precedent, perhaps the tailoring is just to make sure that Mutual of Omaha is read fully against the backdrop of Humana. I think that's exactly right, Your Honor, and not to take interference with the state's administrative regime to mean having any application at all to insurers because that's, that's, Humana rejects that and there's no reason to read Mutual of Omaha to say that. I mean, at most, I think you can read Mutual of Omaha fairly to say that if you're going to have federal courts saying state insurance commissioners did the wrong thing, um, even, even if, you know, the state law and the federal law doesn't necessarily totally contradict that that would be a circumstance where, you know, that interference preemption might apply. But, but Illinois is in here saying they want, you know, the, the added layer, Illinois and, and 18 other states, uh, including DC should, uh, they want that added layer of federal protection here. Um, and they think that their state insurance laws and their state fair housing laws do can be read harmoniously. And so there's certainly no reason to, to say that kind of want the Nevada fraud compliment from Humana is what you're saying, right? Right. There are no further questions. We'd ask if the judgment be, uh, either vacated in part and, uh, and affirmed in part or else affirmed entirely. Okay. Mr. Sandberg, thank you. Uh, Mr. Waxman, we'll give you, um, a few minutes of rebuttal time. Thank you. I just, I just have five points to make unless of course the court has questions. First of all, there was a reference by my friend to, this is just an interpretive rule. Wow. The notion that this is an interpretive rule came up for the very first time in the decade of this litigation or the, or the DC litigation in their letter spin, their supplemental brief that was filed last week at this court's request. The fact of the matter is as the, certainly the district courts have found this is a substantive rule that binds, that states how HUD administratively is going to apply the disparate impact standard in its administrative proceedings against particular insurers. And it also binds how the attorney general who has enforcement authority against insurers and against anybody in the housing industry is going to apply this. The notion that this is a, I mean, Judge Kirsch, your question about why notice and comment rulemaking. There have so far been three notice and comment rulemakings encompassing six years. Um, if this is, this is not an interpretive rule. Now, my friend said, well, you know, the, the state law allows all sorts of things that don't have to do with risk, you know, risk based pricing. And he gave as examples something called bundling and something called price optimization. In all three of the rulemakings and HUD's, uh, you know, federal register publications, there was never a reference to bundling. There's no evidence that the agency ever considered whatever bundling is, bundling to be somehow inconsistent with the requirement of non-discrimination and risk based pricing. There is a reference in one of the rulemakings in, I believe the, the, there is one page in the hundreds of pages of federal register that references price optimization. We address this in our supplemental brief. The only citation for the principle of price optimization is a citation that itself says it is prohibited by state law because whatever price optimization is, state law requires that the rates be non-discriminatory. That is that everybody be charged, everybody within a particular category of risk be charged the same amount. The person who, you know, has a house like, like my new house that has a cedar shake roof and there's my next door neighbor who has a cedar shake roof is going to be charged, assuming all of the other factors in the analysis are the same, is going to be charged the same price by the same insurer. Now the question about Doe and how this court can read, you know, what, how this court should address Doe. First of all, the notion, the way that the agency has tried to reconcile its rule with Doe is to say, oh, that was just a particular application to a particular set of facts that came out a particular way. That is a breathtaking assertion since Judge Evans' dissent from the McCarran-Ferguson part of the opinion that Judge Posner and Judge Easterbrook compiled is that there was a stipulation in that case that the AIDS cap wasn't based on risk factors and it wasn't consistent with state law. And Judge Evans' dissent on the McCarran-Ferguson point was, look, I'm not disagreeing that if you do have a situation in which there's an allegation that something is or isn't consistent with state law, it would be preempted. That's just not this case. So the notion that you can distinguish Doe versus Mutual of Omaha as predicated on a set of facts is simply wrong. And it is also simply wrong with respect to the Eighth Circuit and Third Circuit decisions that we've cited. They announced and applied a general rule of McCarran-Ferguson preemption as applied to challenges to the pricing and underwriting of insurance. Now my friend says that the state of Illinois has said our law can be read entirely harmoniously and therefore this is like Humana. As I said before, Humana is a case that involves a situation and says when there has been a state law adjudication of a violation of the insurance regulations, Mayor McCarran-Ferguson doesn't bar an additional federal penalty placed on that adjudicated state law violation. That's not what's at issue here. If the Illinois Attorney General thinks that the Illinois civil rights statutes that included generally a disparate impact standard can be reconciled with the Illinois law that says there can't be, the rates can't be discriminatory defined as treating identical risks differently, that's for the Attorney General to try and work out if this ever comes up in state court. We have his assertion that this is consistent with state law, but no state in any, not a single state in this country has ever so held and therefore the predicate for a Humana imposition of additional remedies wouldn't apply. Can we call it a day on that? Excuse me? You have a quick final point, otherwise we'll wrap it up here. Yeah, okay, my only point was to respond to the hypo that you addressed, but if you don't need to hear my answer. Your hypo was, we the plaintiffs stipulate that this is entirely consistent, but there's another one that has a disparate impact. I mean, in the history of the Fair Housing Act, nothing like that has ever come up, but it would be preempted because the federal court would have to decide, okay, well, now we're on step three. You have a version which you say is entirely consistent with state law, but has no discriminatory impact. Yeah, I mean, the hypo stipulates compliance with state insurance law. Right, but it can't stipulate that the alternative that the plaintiff is suggesting is in fact consistent with state law, and that's where the rubber meets the road. Thank you very much for your courtesy. You're quite welcome, Mr. Waxman. Thanks to the government as well. We very much appreciate the quality of the briefing, the arguments, the submissions. So Mr. Sandberg, to you and your colleague, thank you. We'll take the appeal under advisement.